# COURT OF APPEALS.

DENNIS McMAHON, assignee of CHARLES T. HARRISON, plaintiff and appellant agt. THOMAS E. ALLEN, defendant and respondent.

1. Where facts are found by a referee in his report, on which judgment in conformity with the report is entered, in case the judgment is reversed at general term and new trial granted, but the findings are not interfered with by the general term in their decision, on an appeal to the court of appeals from such order granting a new trial, the latter court are not at liberty under section 272 of the Code to weigh the evidence, and to determine whether or not they should have reached the same conclusion as the referee.
2. Where a transfer of property real and personal, is obtained fraudulently and inequitably, by false representations made by the transferee to the transferer—by abuse of a fiduciary relationship—by practice on a reckless and improvident sailor—and where the transferer makes a subsequent conveyance of his property and causes of action to the plaintiff for the benefit of his creditors, by a voluntary assignment; such voluntary assignee may maintain in his own name a bill to set aside the first conveyance, as having been fraudulently and inequitably obtained.
3. The decision of the general term in New York, in this case (34 *Barb.* p. 56), on that point overruled. And the late case of *Dickinson* agt. *Burrell* (*Law Rep. Equity Series*, 1866, *part* 3, *March*, *p.* 337), approved of as a well considered case.
4. The case of *Prosser* agt. *Edmonds* (1 *Young & Coll. Eq. Rep.* 481), and *Nicoll* agt. *The New York and Erie Railroad Co.* 2 *Kern.* 121), explained and commented on.
5. The cases of *Livingston* agt. *Peru Iron Co.* (9 *Wend.* 511), and *Yates* agt. *Williamson* (1 *Law Rep. Eq. Series, p.* 528), approved of.
6. A person standing in a fiduciary relation to an heir or person entitled to property, cannot enter into any treaty for the purchase of that estate, without communicating to him every particle of information that he himself possessed with respect to its value.

*On appeal from the First Judicial District.*

THIS is an appeal from a decision of the general term of the first district, reversing a judgment entered on a report of the late William Kent, referee. The plaintiff, as assignee of Charles T. Harrison, for the general benefit of creditors, commenced a suit to set aside a conveyance to the defendant by said Harrison, of the latter's interest, derived under his mother's will, and to recover possession of the property, on the ground that it was obtained by fraud.

The referee decided that the conveyance was obtained by

the defendant by fraud practiced by him on the said Harrison, to whom he stood in a fiduciary relation, and to whom he was indebted at the time of obtaining the conveyance, and who was a mariner in a distressed and needy condition, with reckless and improvident habits ; and that the conveyance was therefore void, and should be set aside.

The referee found certain facts, and arrived at the conclusions of law set forth in the opinion of this court.

The general term reversed the judgment on a pure question of law, viz : *that the assignment to the plaintiff by Charles T. Harrison, did not vest the plaintiff with the right to bring the action in his own name.*

. The plaintiff below appealed from that reversal, under and pursuant to subdivision 2, of section 11 of the Code, and gave the stipulation therein provided.

The decision of the general term is reported in 34 *Barb. Rep.*, *p.* 561. This case has been before the supreme court several times on questions of practice. (*See McMahon* agt. *Allen,* 7 *Abb. Pr. R. p.* 1 ; 12 *Id. p.* 275 ; 14 *Id. p.* 220 ; 22 *How. Pr. R. p.* 193.)

DENNIS McMAHON, *in person.*

I. The assignment to the plaintiff below *was in form sufficient* to convey to him any right which Charles T. Harrison *could legally assign* to avoid his prior conveyance to the plaintiff below.      ₒ

(*a*) It was general on its face, *of all the property real and personal,* and *rights of property real and personal,* and contained all the apt words required by law to pass real estate, viz : " grant, bargain, sell and assign," and was sealed, delivered and acknowledged. (*McKee* agt. *Judd,* 2 *Kern. p.* 622 ; *Waldron* agt. *Willard,* 17 *N. Y. R.* 466, *S. P.*)

(*b*) It directed the assignee in the first place to collect in, *sue for and recover,* the said property of said Charles T. Harrison.

The general term in their opinion, concede that the assign-

ment in form would convey to the plaintiff the right of Charles T. Harrison, if it were assignable.

II. Irrespective of the power to assign a right to impeach the prior conveyance, the assignment was a conveyance of the *property of the assignor* to the present appellant, *as grantee or owner of the property,* the plaintiff has a right to sustain this action.

The objection to the assignment operating as a conveyance of the house in Houston street (which was the principal part of the property assigned), were—

*(a)* That it was an assignment of interest in lands, void by the statutes, relative to champerty and maintenance (2 *R. S.* 691, *O. P.* § 6).

*(b)* That it was a conveyance of lands held adversely, and, therefore, void by the statute (1 *R. S. O. P.* 739, § 147).

*(a)* As to the first objection : the general term below quote with approbation the rule that rights of entry are not assignable ; a brief reference to that rule and its reasons, and the decisions thereupon, will establish that this ground of objection is untenable in this case. (*See Coke on Lit.* 214 [§ *b*], § 347.) " Here *Littleton* reciteth one of the maxims of the common law, and *the reason hereof is for avoiding of maintenance, suppression of right and stirring up of suits ; and, therefore,* nothing in action entree or re-entree can be granted over, for so under color thereof, pretended titles might be granted to great men, whereby right might be trodden down, and the weak oppressed, which the common law forbiddeth, as men to grant before they be in possession."

Nevertheless, *Coke* makes various diversities to this rule. The statute of 32 *Henry VIII* (*chap.* 34) ; 2 *Revised Statutes,* 505 (§ 30), however, extended the right of re-entry to assignees, grantees, &c., of the reversion, in cases of leases and of particular estates, as against the lessee, his heirs and assigns. And our statute of 1805, still further extended the assignability of leasehold estates, but *now by our statute* (1 *R. S.* 725, § 35), *expectant estates are descendible, devisable and alienable, in the same manner as estates in possession.* This rule of not assigning the right of re-entry, has been abroga-

ted in Pennsylvania, as incompatible with our republican institutions, by *Stover* agt. *Whitman*, in 6 *Binney*, *p*.416.

And the late causes in our own courts, in effect, dispose of the reason of the aforesaid common law rule forbidding the transfers of the right of entry. The reason ceasing, the rule itself should cease. (*Thallhimer* agt. *Brinkerhoff*, 3 *Cow*. 633, *opin.* 648 ; *Gilleland* agt. *Failing*, 5 *Denio*, 308 ; *Mott* agt. *Small*, 20 *Wend.* 221 *and* 222 ; *Id*. *p*. 405 ; *Sedgwick* agt. *Stanton*, 14 *N. Y. R. pp*. 295 *to* 301 ; *Van Rensselaer* agt. *Read*, 26 *N. Y. R. opin*. 579.)

The provisions of the Revised Statutes relative to champerty (2 *R. S.* 691, *O. P.* § 6), do not apply to this case.

1st. The thing forbidden is the *buying* or *selling* of any *pretended right* or title to any lands, tenements or hereditaments.

The case as found by the referee below, is not one of a purchase of a *pretended right*, but is one of a *bona fide assignment* to the plaintiff as trustee, for the general benefit of creditors of a *valid estate*, whereof the assignor has been *defrauded* by the wrongful act of the defendant below.

2d. The statute forbids such sale unless the ·" grantor shall have been in possession * * * *or have taken the rents and profits thereof for the space of one year before such grant*."

5. Nevertheless, even if the conveyance were void by the doctrine of maintenance, yet by the following decisions the conveyance is good as between the plaintiff's assignor and the plaintiff. *It is only void as against him who hath right.* (*Van Hoesen* agt. *Benham*, 15 *Wend.* *p*. 164 ; *Keneda* agt. *Gardner*, 3 *Barb*. 593 ; *Livingston* agt. *Proseus*, 2 *Hill*, 528 ; *Cameron* agt. *Irwin*, 5 *Hill*, 282.)

The referee having found that the defendant's title was acquired *by fraud*, he, therefore, hath *no right* (*Crary* agt. *Goodman*, 22 *N. Y. p*. 177).

6. The case of *Nicholl* agt. *The N. Y. and Erie Railroad Co*. (2 *Kern. p*. 121), cited by the general term below, in deciding that a mere right of entry is not assignable, does not go to the extent claimed for it by the general term. It in effect decides that the mere possibility that an estate will

McMahon agt. Allen.

be defeated by the breach of a condition subsequent, is not assignable ; although it holds that the grantor of the estate or his heirs, may take advantage of the breach. The court says, that a mere failure to perform a condition subsequent, does not divest the estate. The grantor or his heirs, may not choose to take advantage of the breach, and until they do so, by entry or by what is now made by statute its equivalent, there is no forfeiture of the estate. But the court say, what is meant by possibilities coupled with an interest, is of a very different character, as may be seen by reference to 4 *Kent*, 262, *O. P.*, and 13 *Wend.*, *pp.*, 192, 193 *and* 194.

On referring to these authorities, the case in 13 *Wendell*, it will be found that every species of a possibility, if coupled with a vested interest in land, is descendible, devisable and assignable.

The late case of *Dickinson* agt. *Burrill* (*Law Rep. Equity Series*, 1866, *Part* 3, *Mar. p.* 337), is directly in point.

Apply these principles to the cause at bar; it will be quite evident that Charles T. Harrison had the right to assign the property in question, so as to vest in the plaintiff the equitable estate in the property in controversy, and the right to recover it in the hands of the defendant.

The general term in their opinion say, that the deed given by Charles T. Harrison to the defendant was *voidable*, not void, and must so remain until declared so by the court; and it cites several cases from *Johnson's Reports* sustaining that doctrine. On examining every one of these cases, they will be found to arise as between creditors of the grantor and a *bona fide* purchaser from the fraudulent grantee without notice, and have no precise application to our case at bar—wherein the assignor of the plaintiff *is found by the referee to have been absolutely cheated out of his property by a fraudulent grantee,* and the question arises between the assignee for general benefit of creditors of the party defrauded and the fraudulent grantee—no rights of a *bona fide* purchaser without notice, intervening or arising.

Chief Justice MARSHALL, in *Fletcher* agt. *Peck* (6 *Cranch,* 133), states the rule properly : If a suit be brought to set

aside a conveyance obtained by fraud, and the fraud be clearly proved, the conveyance will be set aside as between the parties; but the rights of third persons, who are purchasers without notice, for a valuable consideration, cannot be disregarded. But it will be found by reference to *Anderson* agt. *Roberts* (18 *Johns. p.* 512), that the reason why *bona fide* purchasers are protected is because of the statute 13 *Elizabeth, chapter* 5, *section* 3 (2 *Rev. L.* 134). *Crary* agt. *Goodman* (22 *N. Y. R. p.* 177); *Livingston* agt. *Peru Iron Co.* (9 *Wend.* 511, 523); *Mead* agt. *Bunn* (32 *N. Y. R. p.* 275), hold that as between the parties, the fraudulent grantee has no title—the deed is a nullity. If then a nullity, Charles T. Harrison was rightfully the owner of the property assigned, and had the right to vest the plaintiff with the same, and the right to have his deed impeached.

(*b*) The second objection to the conveyance, viz: that the assignment to the plaintiff was void because it was a conveyance of lands, held adversely (1 *R. S. O. P.* § 147).

Under the findings (see same quoted in opinion), we submit that the defendant below could not maintain that he was under the term of the statute (1 *R. S.* 739 *O. P.* § 147), holding the property in controversy *under a title adversely to the grantor* (Charles T. Harrison), so as to avoid the latter's assignment to the plaintiff below.

1. *For a fraudulent title is not the basis of an adverse possession.* (*Livingston* agt. *Peru Iron Co.* 9 *Wend.* 511; *Crary* agt. *Goodman*, 22 *N. Y. R. p.* 170; *Woodward* agt. *McReynolds*, 1 *Chand. Nisi R.* 250; *Van Hoesen* agt. *Benham*, 15 *Wend.* 164.)

2. The defendant below standing in a fiduciary relation to the assignor, at the time he took the conveyance from him, in fact was his trustee, holding those lands in question subordinate to him (*Baker* agt. *Whiting*, 3 *Sum.* 475, 481 *to* 487).

3. Under sections 81 and 82 of the Code, such a holding is not an adverse possession.

IV. The case of *Livingston* agt. *Peru Iron Co.* (9 *Wend.* 511), was not overruled by the case of *Humbert* agt. *Trinity*

*Church* (24 *Wend.* 610 *and* 635), as supposed by the general term below. (*See Crary* agt. *Goodman,* 22 *N. Y. R. p.* 177). SELDEN, J., in the latter case shows that the two cases are not antagonistic.

Irrespective of the question as to whether or not the assignment to the plaintiff was valid as a conveyance of the estate, we submit it was valid as a conveyance of a right in the plaintiff to avoid by action in his own name, the fraudulent conveyance on the defendant, because,—

V. The assignor of the plaintiff below could avoid his prior conveyance to the defendant below, in an action brought *by himself* to impeach the conveyance on the ground of its being obtained by fraud or covin.

· *(a)* This is conceded by the general term. (*See opinion, fol.* 775 ; *Livingston* agt. *Proteus,* 3 *Hill,* 528, 529.)

*(b)* Fraud destroys the contract *ab initio,* and the fraudulent purchaser has no title (*Chitty on Contracts,* 406, 678, 681, *Am. ed. of* 1842). The deed is a nullity. (*Livingston* agt. *Peru Iron Co.* 9 *Wend.* 511-523; *Crary* agt. *Goodman,* 22 *N. Y. R. p.* 177 ; *observations of* SELDEN, *J.*)

*(c)* The referee found that the conveyance to the defendant below, was obtained by him by a fraud practiced on the plaintiff's assignor.

*(d)* A possession fraudulently taken, is unavailable to the party (6 *Wheat. p.* 580).

*(e)* In *Mead* agt. *Bruen* (32 *N. Y. R. p.* 275), the court held that a contract obtained by fraudulent means, though perfect in form is void in law.

VI. Charles T. Harrison then having the right to impeach his own conveyance, on the ground of its having been procured by fraud, we submit could assign the property so conveyed, and also a right to impeach the conveyance, and the view of the general term denying such right, is untenable.

*(a)* The following cases show that the assignment by Charles T. Harrison to the plaintiff below, would be good as between the assignor and the plaintiff, notwithstanding that the defendant was holding adversely to the assignor, and would authorize the plaintiff to maintain an action to set

aside the prior conveyance, for his (the plaintiff's) benefit, which action the assignor could not discontinue. (*Livingston* agt. *Proteus*, 2 *Hill*, 528 ; *Cameron* agt. *Irwin*, 5 *Hill*, 282 ; *Kenada* agt. *Gardner*, 3 *Barb.* 593 ; *Lawrence* agt. *Bayard*, 7 *Paige*, 76.)

The general term below refer to this position, and do not dispute it. (*See Van Rensselaer* agt. *Read*, 26 *N. Y. R. p.* 379, *observations by* SELDEN, *J.* ; *Main* agt. *Davis*, 32 *Barb. R. p.* 469.)

(*b*) It is therefore apparent that the true party in interest is the assignee, inasmuch as the fruits of the action would belong to him *as such*, and not to his assignor.

(*c*) Section 111 of the Code here interposes, and provides that the action *must be* brought in the name of the true party in interest. The subsequent clauses of that section as they now appear in the Code, were created by an amendment of the Code in 1862. We are to have this question decided by the provisions of the section 111, as it existed prior to that amendment.

(*d*) Section 113 provides that a trustee of an express trust may sue as plaintiff, without joining with him the person for whose benefit the action is prosecuted. An assignee for the general benefit of creditors, is a trustee of an express trust (*Cunningham* agt. *McGregor*, 12 *How.* 303).

The assignor and creditors are before the court by representation (*Mead* agt. *Mitchell*, 5 *Abb.* 106).

See *Hooker* agt. *Eagle Bank of Rochester* (30 *N. Y. R. p.* 83), which among other things hold that under the Code an assignment, valid as an equitable assignment, is equally valid at law. (*McKee* agt. *Judd*, 2 *Kern.* 622 ; *Brady* agt. *Burrill*, 1 *Abb.* 76 ; *Butler* agt. *N. Y. and Erie Railroad Co.* 22 *Barb.* 110.)

This last case cites and disapproves of 18 *Barb.*, 500 ; 17 *Barb.*, 468 ; 1 *E. D. Smith's R.*, 73. (*Field* agt. *The Mayor*, 2 *Seld.* 187 ; *Quin* agt. *Moore*, 15 *N. Y. R.* 432 ; *Meech* agt. *Stover*, 19 *N. Y. R.* 26.)

(*e*) A general assignment for the benefit of creditors, is considered a valid conveyance, founded upon a valuable con-

sideration, and good against creditors proceeding adverse to it. (*Sewall* agt. *Marwood*, 9 *B. & C.* 300 ; *Nichols* agt. *Munford*, 4 *Johns. C.* 532 ; *McKee* agt. *Judd*, 2 *Kern.* 622.)

At any rate, the assignment here passed to the plaintiff below, the estate undisposed of to the defendant. If no estate was disposed of to the respondent Allen, by the first conveyance, because it was unfairly procured, then it was passed to the present appellant, by virtue of the general assignment, and the words of conveyance therein contained, who could test the *bona fides* of such first conveyance.

In the consideration of this point, we submit it is unnecessary to determine whether Charles T. Harrison could convey a title to the assignee of the land he had previously conveyed to the defendant below. It is sufficient to consider whether he could convey the right to impeach his prior conveyance.

The general term below, we submit, fell into a confusion on this subject. They held that the inability to convey the present possession of the land held adversely, operated so as to defeat the conveyance of the right to avoid the deed, the basis of the adverse title, which right, however, they admitted existed in the assignee, to assert in the name of the assignor. The right to impeach a conveyance on the ground of fraud, passes to the heirs, executors and devisees of the party defrauded.

This is conceded by the general term. If so, then such right is assignable.

VII. The defendant below was not holding these lands adversely at the time the said Charles T. Harrison assigned his property to the plaintiff, because the referee found as a matter of fact that the defendant stood in a fiduciary relation to the said Charles, with regard to said property, *and in equity would be considered as holding it* as his, said Charles' trustee, and not adversely to him. If so, there being no *positive prohibition by any statute* on the part of the said *cestui que trust*, conveying away *such an equitable trust estate*, the plaintiff would be vested with the proper title to search out

and recover this trust property in the hands of the defendant below.

The late case of *Dickinson* agt. *Burrill*, reported in " *The Law Reports*," *Equity Series*, 1866, *Part* 3, *Mar.* page 337, is directly in point.

*Baker* agt. *Whiting* (3 *Sum. p.* 475, *opin.* 481 *to* 487), is directly in point.

VIII. The case of *Prosser* agt. *Edmonds* (1 *Young & Coll. Exch. R. p.* 481), does not apply to this case.

That was a case of assignment by A., who was entitled to certain property under his father's will (all of which was personalty), for a valuable consideration to B., excepting a reversionary interest in certain funds ; afterwards A. assigned the whole of his interest under his father's will, including said reversionary interest to C. It was held that C. could not maintain a bill to set aside the first assignment, on the ground of fraud committed by B. against A., the latter of whom refused to join as plaintiff in the suit, *and made no complaint about the fraud.* The court appear to put their decision on the statutes relative to maintenance (32 *Henry VIII, ch.* 9), re-enacted in our Revised Statutes, and that the assignment of choses in action was against the policy of the law against the sales of right to litigate. The court also lay great stress on the fact that the *assignor made no complaint of the instrument sought to be set aside,* and refused to be made a *party to the suit.* This decision, if sustained in our courts, would put an end to a vast number of suits founded on rights to personalty acquired by assignment, and sought to be sustained by the assignees. It is founded on no authority excepting the case of *Wood* agt. *Downes* (18 *Ves.* 120), which so far from supporting it, rather overthrows it ; for in that case the Lord Chancellor ELDON allowed, as between attorney and client, a deed claimed to be against the policy of the law as to maintenance and champerty, to stand as security for what was actually due, and the purchase by the attorney to be considered a trust. The case cited does not apply to ours.

It is a decision which is founded on the exceeding dislike

McMahon agt. Allen.

of the English courts to recognize assignments of choses or rights in action.

As the general term reversed the judgment below solely on the ground that Charles T. Harrison did not convey any right to the plaintiff below to sue in his own name, if they were in error, we are entitled to have their order granting a new trial reversed, and the previous judgment of the referee sustained.

ALBERT MATHEWS, *for respondent.*

I. The appeal taken by the defendant to the general term of the supreme court, from the orders and judgment entered upon the referee's report, brought up for review numerous exceptions taken at the trial, to the exclusion of proper, and admission of improper evidence; also numerous exceptions taken after judgment to separate conclusions in the referee's report.

All of these exceptions were before the court below, and were argued and considered. *If any one of these exceptions were well taken, the decision of the inferior tribunal in grant-ing a new trial was correct, and this court must affirm the order;* and under the stipulation (given on taking this appeal), the defendant must have final judgment absolute in his favor. It is wholly immaterial to this court upon what particular point or exception the case was decided in the lower court, or what particular reasons any member of that court may have had or given for his opinion. It is quite enough for this court to know that an order for a new trial was properly granted. Any other rule of procedure here, would leave a respondent (on an appeal from an order grant-ing a new trial) in a worse predicament than if the court below had affirmed the judgment, and he had himself appealed, as in that case he would undoubtedly have a right of reversal for any error committed by the referee to his prejudice (*Titus agt. Orvis,* 16 *N. Y. R. p.* 618).

II. The defendant's appeal to the general term of the supreme court, *also* brought up for review all the *material*

*conclusions of fact* found by the referee. Nearly all of these conclusions of fact were excepted to as *erroneous.* If this court will examine the evidence, these *conclusions of fact* will be found not only unsupported by any reliable proof, but entirely disproved by overwhelming evidence. The court will not, however, examine the evidence to find grounds for reversal of the order granting a new trial. The appeal from the order concedes to the defendant " every conclusion of fact, which is supported, however slightly, by the evidence " (*Hoyt* agt. *Thompson,* 19 *N. Y. R. p.* 212). This appeal does not otherwise bring up for review any question of fact (*Id. p.* 207). This court must affirm the order, " if it can stand consistently with any view to be taken of the evidence given at the trial." (*A. D.* 1859, *Miller* agt. *Schuyler,* 20 *N. Y. R. p.* 522 ; *A. D.* 1861, *Sandford, Administrator* agt. *Eighth Av. R. R. Co.* 23 *N. Y. R.* 343 ; *A. D.* 1864, *Macy* agt. *Wheeler,* 30 *N. Y. R. p.* 237 ; *A. D.* 1864, *Bergen* agt. *Wemple,* 30 *N. Y. R. p.* 319.)

III. The counsel here discussed the facts at great length, and maintained that this court could review these findings of the referee sufficiently to find matter whereon to determine that the order of the general term granting a new trial was proper.

IV. The supreme court properly granted a new trial, because also of errors in matters of law committed by the referee, in respect to the legal effect of the assignment made by Charles T. Harrison to the plaintiff. No part of the subject matter of the conveyance made by Harrison to the defendant in *March,* 1852, passed to the plaintiff under the asssignment made ostensibly for the benefit of creditors in *August,* 1852.

1. The plaintiff being a mere *voluntary assignee,* he could not be heard (before the act of 1858), to impeach the conveyance of Harrison to Allen, as fraudulent against creditors, if any, of Harrison (*Van Heusen* agt. *Radcliff,* 17 *N. Y. R.* 580).

2. The assignment to plaintiff could not pass any interest Harrison might have claimed in the Houston street property.

He was out of possession, and defendant was in full possession. At the worst, Harrison's conveyance to Allen was merely *voidable*, and not void. Even if Harrison had attempted by specific conveyance to transfer a claim to right of possession thereof, or title thereto, such conveyance would have been void by the prohibition of the statute against champerty. (1 *R. S. p.* 739, § 147; *Burhans* agt. *Burhans*, 2 *Barb. Ch. R. p.* 408; *Lowber* agt. *Kelly*, 17 *Abb. R.* 458; *Lowber* agt. *Kelly*, 9 *Bosw. R.* 494; *Howard* agt. *Howard*, 17 *Barb. R.* 665.)

*(a)* The decision in the case of *Livingston* agt. *The Peru Iron Co.* (9 *Wend. R.* 512), is based upon the fact that the deed there in question was absolutely *void in fact*, for want of authority in those who executed it (*Humbert* agt. *Trinity Church*, 24 *Wend. R.* 636).

3. The assignment to the plaintiff on its face does not purport to convey any right of Harrison, to impeach his conveyance to the defendant. The absence of any reference in it to the conveyance to defendant, is conclusive evidence that Harrison did not intend thereby to confer upon plaintiff any right to disturb the contract made with the defendant (*Strong* agt. *Strickland*, 32 *Barb. R.* 284).

V. The plaintiff in this action is not in a position to ask the equitable interference of the court, in the same manner as Charles T. Harrison might have done, if a wrong were done to him.

1. Charles T. Harrison makes no claim in this action.

2. This is not the case of an aggrieved heir asking to be restored to an estate he has sold.

3. Harrison was not selling an expectancy, and his conveyance to Allen does not fall within the rule making such sales liable to be avoided. The subject matter of the sale to defendant was a present estate in possession, and the settlement of a suit commenced to recover it.

5. The referee erred in directing the assignment to Allen to be set aside entirely.

1. At least, it was good beyond the extent of any valid

creditors of Charles T. Harrison who might claim under the assignment to the plaintiff.

2. Besides, the revocation of September, 1852, was valid to sustain Mr. Allen's right to any surplus, and could not be impeached to this extent by the plaintiff here, nor in any action in which Charles T. Harrison was not a party. (*Waterbury* agt. *Westervelt*, 5 *Seld. R.* 598.)

3. The Code of Procedure prohibits such an action as this in the name of the plaintiff (*Code of Pro.* § 111).

VI. Assuming all the plaintiff's allegations to be true, his pleadings and evidence failed to establish a cause of action upon which a suit could be maintained *in his own name* against the defendant. No right of action could accrue to the plaintiff, by assignment of Harrison, to institute this action to set aside the conveyance by Harrison to defendant as voidable, for the reasons alleged in the complaint, or sought to be proved on the trial. Whatever right Harrison had was a "naked claim to commmence an equitable action" for an alleged imposition upon Harrison himself personally. It was "a naked claim to overset a legal instrument." It was a *privilege personal* to Harrison, "an unrecognized claim, of which there was no possession or capability of assignment." He will be presumed to have waived it, unless there be evidence of an intention to the contrary by his instituting an action himself to enforce it. (*Prosser* agt. *Edwards*, 1 *Young & Coll. Exch. R.* 81; *Story's Eq. Jur.* § 1040 *g. and note* 5; *Thurman* agt. *Wells*, 18 *Barb. R.* 515.)

1. This claim of Harrison was no better than a *right of re-entry* upon lands for forfeiture by condition broken, which has been often held not to pass by assignment. (*Rice* agt. *Stone*, 1 *Allen's R.* 566; *Trask* agt. *Wheeler*, 7 *Allen's R.* 11; *Nicoll* agt. *N. Y. & Erie R. R. Co.* 2 *Kern. R.* 121.)

2. It was no more assignable than a cause of action for *deceit*, or a right to cancel securities for usury. (*Greene* agt. *Morse*, 4 *Barb. S. C. R.* 332; *Murray* agt. *Judson*, 9 *N. Y. R.* 84; *Boughton* agt. *Smith*, 26 *Barb. S. C. R.* 635; *Zabriskie* agt. *Smith*, 3 *Kern. R.* 322; *Bullard* agt. *Raynor*, 30 *N. Y. R.* 230.)

VII. The counsel here discussed at much length many exceptions to evidence taken by him on the trial below, and contended that the general term below would have been authorized to have granted a new trial on those exceptions.

VIII. The order granting a new trial should be affirmed, and judgment absolute ordered for the defendant, with costs.

HUNT, J.   On the 22d of March, 1852, Charles T. Harrison was the owner of a life estate in No. 694 Houston street, New York, as tenant in common with his brother Samuel. At the same time the defendant was indebted to the said Charles in the sum of $500, for moneys received by him belonging to said Charles, from the surplus of the sale of No. 14 Charles street, and for rents of said premises in Houston and Charles streets, collected by said defendant while assuming to act as agent for the said Charles T.   The said Charles also had an interest in certain trusts under his mother's will, which, under some circumstances, might be of value.   He was at this time a mariner; had been such for seven years previously; was reckless, improvident, unacquainted with business as transacted on land; easily led and persuaded to do foolish things; was needy and in want.   At and before the time mentioned, the defendant stood in a fiduciary relation to said Charles, from having acted as his agent in collecting the rents and surplus interest, as above mentioned, and had also been the agent of the executor of his mother's estate, who was also trustee of personal property directed to be invested for the benefit of Charles T. and his brother Samuel.

On the day mentioned, the defendant, by unjust and inequitable means, obtained from the said Charles T. Harrison a conveyance of all the lands, tenements, claims, demands, bonds and money, belonging to him as devisee, legatee or appointee of his mother, or as one of her heirs-at-law, describing particularly certain interests and certain lands.

Charles T. Harrison was then ignorant of business, and of the value and situation of his property; unacquainted with the state of accounts between himself and the defend-

ant ; unable himself to investigate them, and had no counsel to advise or assist him.   The defendant knew all these facts; knew him to be reckiess, improvident and dissipated, and did not disclose to him the state of his affairs, but concealed them, and drew him into making the above conveyance, the consideration of which was grossly inadequate, and the defendant's conduct in obtaining the deed was inequitable and fraudulent.   The actual value of the estate so conveyed was at least $2,300, and under some contingencies it would have been more valuable.   The amount paid by the defendant to said Charles T., was about $1,100, of which $700 was in money, $150 in a gold watch, and $250 was paid to the defendant's counsel, for which the said Charles T. received no benefit whatever.   At the time of the said conveyance, Charles T. was indebted to the amount of $600, and his creditors are prejudiced by the conveyance aforesaid.

On the 3d of August, 1852, the said Charles T. Harrison made an assignment to the plaintiff for the benefit of creditors, of all his property and rights of action, with full powers to sue for and collect the same.

On the 3d of September, 1852, the defendant, by further fraud and imposition, obtained from the said Charles T. a writing attempting to revoke the above assignment to the plaintiff.

The facts stated are as found by the referee in his report, and there is evidence to sustain them.   They are not interfered with by the supreme court in the judgment given by it, and are obligatory upon us.   We are not at liberty to weigh the evidence to determine whether we should have reached the same conclusion (*Code*, § 272).   Upon the above facts, the referee directed the setting aside of the conveyance to the defendant of March 22, 1852; that an accounting be had by said defendant of the moneys, rents and interests received by him, and judgment was entered upon his report in favor of the plaintiff, with costs.

The defendant appealed from this judgment to the general term of the first district, where the judgment of the referee was reversed on the sole ground, as stated in the opinion,

that the cause of action could not be transferred by Harrison, so that an action could be maintained upon it in the name of the plaintiff.

A transfer of property, real and personal, is obtained fraudulently and inequitably, by false representations made by the transferee to the transferer, by abuse of a fiduciary relationship, by practice upon a reckless and improvident sailor. The transferer makes a subsequent conveyance of all his property and causes of action to the plaintiff, for the benefit of his creditors. Can the plaintiff mantain an action in his own name against the first transferee to set aside the conveyance to him, as having been fraudulently and inequitably obtained, and by an abuse of a fiduciary relationship?

In the recent case of *Dickinson* agt. *Burrill*, this precise question was presented. (*See the Law Rep. Eq. Series*, 1866, *Part* 3, *March, p.* 337.) James Dickinson and others, made a conveyance of their respective shares of the real estate of George Whitebeard, deceased, to John Edens, which was liable to be set aside on the equitable grounds, viz : that Edens was acting as solicitor for Dickinson in relation to the Whitebeard estate ; that the consideration was inadequate ; that Dickinson was in indigent circumstances, and ignorant of the value of property conveyed. Dickinson subsequently made a voluntary settlement of the same property, in trust for himself for life, with remainder to his children, as he should appoint, and in default of appointment, to all his children who should attain twenty-one years of age, or being daughters, should marry, in equal shares. The bill was filed by five of Mr. Dickinson's infant children, to set aside the conveyance to Edens as to their portion of the estate. The other three children, the trustees of the settlement and Edens, were the defendants in the suit. Mr. Dickinson was not a party. Edens demurred to the bill for want of equity. Mr. Selwyn, Q. C., Mr. Jessel, Q. C., and Mr. Hemmings, in support of the demurrer, claimed that the plaintiffs could not institute the suit, arguing that at the time of making the voluntary settlement Mr. Dickinson had parted with all his interest in the property for a valable con-

sideration, and that the settlements, therefore, conveyed nothing but the right of suit to set aside the previous conveyance, which was contrary to public policy on the ground of champerty, and not to be supported in equity. They further argued, that if a *bona fide* conveyance would authorise the suit, it was otherwise with a voluntary settlement, which the settler could at any time avoid by a subsequent conveyance for value. Mr. Southgate, Q. C., and Mr. Webb, in support of the bill, argued that there was no rule in equity prohibiting the sale of property which the assignor was entitled to recover by suit; that the right of suit was incidental to the right of property, and did not affect the right to assign it. The demurrer was overruled, with costs.

Lord ROMILLY, M. R., deciding the case, said : "Upon the allegations contained in the bill, I am of the opinion that a case is made out, upon which if proved as there stated, this court would give relief at the instance of the proper persons. The only question, therefore, that I have to determine is, whether by reason of the deed of April, 1864, the plaintiffs have a right to ask for that relief which their father, the settler, and the trustees of the settlement, have refused or declined to concur in asking for such relief." He proceeds : " assuming the deed of April, 1864, to have been executed for value, then the right of suing is incidental to the conveyance of the property, and passed with it ; that is, if James Dickinson had thought fit, after the sale to Edens in 1860, to sell the same property to A. B., saying that the previous sale was a fraudulent one, and though he himself would not take any steps to set it aside, yet if A. B. thought fit to do so he might, and that he would sell his interests in the property to A. B., for a sum of money then *bona fide* agreed upon, in such a case, in my opinion, A. B. could have maintained the suit. The distinction is this : If Dickinson had sold or conveyed the right to sue to set aside the indenture of December, 1860, without conveying his interest in the property which is the subject of that indenture, that would not have enabled the grantee, A. B., to maintain this bill, but if A. B. had bought the whole interest of James Dickin-

son in the property, then it would. The right of suit is incidental to the property conveyed, nor is it, in my opinion, a right which is only incidental to the property when conveyed as a whole, but is incidental to each interest carved out of it."

He then considers the point that the conveyance was voluntary, and whether that fact alters or affects this right to sue, and says : "I am of the opinion that it does not. * * * Assuming a voluntary deed to be complete, *bona fide* and valid, and unaffected by a statutory disability, I know of no distinction between such a deed and one executed for valuable consideration. The estate and limitation created in such a deed have the same operation and effect as in a deed executed for value, and must be construed in the same manner, and it carries with it all the same incidents and rights attached to the property conveyed as are carried by a deed executed for value, and the grantee in this respect stands in exactly the same situation as if he had paid value for the property conveyed."

This was a well considered case ; is of high authority and, in my opinion, is an accurate exposition of the law. I think it should control the present case.

*The Oneida Bank* agt. *The Ontario Bank* (21 *N. Y. R.* 490, 498), and *Tracy* agt. *Talmage* (14 *N. Y. R.* 192), were cases similar in principle to the present. In the former case, the Ontario Bank had issued certain post-dated drafts, which are held to be within the prohibition of the statute against bills or notes not payable on demand. Assuming such draft to be void, it was held that the party who received them upon a loan of money to the bank, was entitled to the money advanced by him, either upon the basis of a contract of loan, treating that as valid, and rejecting the illegal security, or upon a disaffirmance of the contract as for money had and received. It was further held, that the discount of such a draft by the Oneida Bank for Perry, the original lender, and the transfer of the same by him to the Oneida Bank, the plaintiff gave to such transfer the same rights of action against the Ontario Bank that Perry had ; the court says : "He who sells a security and receives his pay for it, neces-

sarily sells whatever claim or right the security is understood by the parties to represent."

In *Tracy* agt. *Talmage*, the Morris Canal and Banking Company had received certain post notes which were held to be void. The Morris Company transferred $196,000 of such notes to the state of Indiana. The consideration for the post notes was certain state stocks delivered to the banking association issuing the same, and the question among others was, whether the state of Indiana was entitled to recover that consideration, the notes being considered void. There was no pretense that anything except the notes had been transferred in form, but it was held that the state was in equity the assignee of the demand which the notes professed to represent, and was entitled to recover the value of the stocks. (*See* 21 *N. Y.* 499.)

In *Waldron* agt. *Willard* (17 *N. Y. R.* 466), the firm of Bourn & Co. executed to the plaintiff a writing that "we have this day sold to M. R. Waldron all our interest in the goods sunk by the boat *Wyoming*," with certain other particulars. It appeared that in the April preceding, Bourn & Co. had shipped the goods in question by the defendant's boat on the Hudson river; that the boat was sunk, and after being fifty-five days under the water, it was raised, the goods on board was taken out and sold for the benefit of the line. These facts were known to both parties to the bill of sale; it was held by this court that the above sale operated as a valid assignment of the rights of action against the carrier for the non-delivery of the goods.

The case of *Prosser* agt. *Edmonds* (1 *Young & Co.* 481, &c.), is cited as an authority in opposition to the doctrine. I have stated I do not understand the question at issue to have been invalid in that case, or that it was intended to have been decided by Lord ABINGER. He says that when a party assigns his whole estate, and afterwards makes an assignment of the same estate generally to another person, and the second assignee claims to set aside the first assignment as fraudulent and void, the assignor making no complaint of fraud, the right of the second assignee to make

such a claim, would be a question deserving of great consideration. He expresses his present impressions as against the right , and illustrates his idea by suppositions which are at variance with the principles established in the cases in our courts.

Lord ROMILLY says in *Dickinson* agt. *Burrill* (*supra*), " that the case before us does not fall within the rule established by that decision of *Prosser* agt. *Edmonds*."

Nor is this case in principle like that of *Nicoll* agt. *The New York and Erie Railroad Company* (2 *Kern.* 121). The decision there was, that when land was conveyed with a condition subsequent, a mere failure to perform the condition does not divert the title, but there must be an entry, or what is equivalent by statute, by the grantee or his heirs, and that this right of entry did not pass by a conveyance of the land. This was the express ground that the conditions subsequent were reserved for the benefit of the grantor and his heirs solely, and that no other person could take advantage of the breach. Of a similar character are the usury cases sometimes cited, which holds that the defense is a personal one, and that none but the borrower technically, or his personal representatives, can set up the defense. In regard to an adverse holding by the defendant at the time of the execution of the assignment, the case of *Dickinson* agt. *Burrill*, as well as that of *Livingston* agt. *The Peru Iron Co.* (9 *Wend.* 511), show that such defense is not available, where the holding was under a deed fraudulently obtained. In the latter case, it appeared that Livingston made a voluntary conveyance to his sons of a large tract of land in Clinton county. The sons filed a bill against the defendants, alleging that their purchase was obtained by fraudulent misrepresentations as to the character and value of the land. The defendants demurred, on the ground that they were in possession of the land at the time of his conveyance by Livingston to his sons, by virtue of the deed under which they claimed. The court of errors held against the demurrer, deciding that possession under a deed fraudu-

lently obtained, could not be deemed adverse, so as to avoid the deed of the plaintiff.

The court below, in my opinion, were in error in holding that the assignment to the plaintiff did not authorize the suit brought by him in his own name. The evidence of abuse of the confidence arising from a *fiduciary* relation, brought the case within the principle of *Yates* agt. *Williamson* (1 *Law Rep. Eq. Laws, p.* 528), which was shortly this: "A nephew of a former trustee of B.'s property, being commissioned by his uncle to advise B., a young man aged twenty-three, of intemperate and extravagant habits, in the settlement of his college debts, which amounted to £1,000, and to advance him £500 for the purpose, offered to give him £7,000 for his undivided moiety of an estate under which there were coal mines, the working of which had been discontinued for fifteen years; pending the negotiation, A. obtained from C., a mining engineer, an estimate putting the value of the minerals under the entire estate at £20,000. A separate solicitor was employed for B. at A.'s suggestion, and before completing the bargain A. urged B. to consult his father (with whom he was not upon good terms). A. did not communicate to B. the valuation of the engineer, nor did he suggest to him to consult a mineral engineer. B. accepted A.'s offer of £7,000, and died shortly after executing the conveyance. On bill by B.'s administrator to set aside the purchase: *held*, that such a fiduciary relation existed that the suppression from B. of the engineer's valuation, rendered it impossible for the courts to sustain A.'s purchase. Sir A. PAGE, V. C., says: "The broad principle on which the court acts in cases of this description is, that wherever there exists, such a confidence of whatever character that confidence may be, as enables the person in whom confidence or trust is reposed, to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him. * * * The young man

having then said that he was determined to dispose of his property, it was absolutely impossible for Robert William-son, filling as he did that position of confidential adviser, to enter into any treaty for the purchase of that estate, without communicating to him every particle of information that he himself possessed with respect to its value."

The judgment of the general term should be reversed, and that of the referee affirmed, with costs.

Concurred in by all the members of the court.